# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ONTEL PRODUCTS CORP., | Civil Action No: |
| *Plaintiff*, | 17-cv-3658 (PGS)(LHG) |
| v. | |
| ZURU LTD., and ZURU, INC., | **MEMORANDUM AND ORDER** |
| *Defendants*. | |

This matter comes before the Court on Defendants Zuru LTD and Zuru, Inc.'s (collectively, "Zuru") Motion to Dismiss Plaintiff Ontel Products Corp.'s Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 8). Plaintiff alleges Defendants have engaged in unfair competition, in violation of the Lanham Act, 15 U.S.C. § 1125(a), and presents common law claims of unfair competition, tortious interference with a prospective business advantage, and unjust enrichment. In support of Defendants' contention that Plaintiff has failed to state a claim, Defendants rely exclusively on one defense. That is, Defendants argue they are immune from liability by virtue of the Noerr-Pennington[1] immunity doctrine. Because Defendants' motion is predicated solely on the Noerr-Pennington immunity, the discussion herein is limited to Defendants' Noerr-Pennington immunity argument.

---

[1] *E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657 (1965).

## BACKGROUND

On May 22, 2017, Plaintiff initiated this suit by filing a Complaint in this Court against Defendants. (ECF No. 1). Plaintiff is a New Jersey-based company that markets and develops retail products commonly found in large retail stores, such as Toys 'R' Us, Walmart, Home Depot, and Bed Bath and Beyond. (Comp. at ¶ 10). Specifically, Plaintiff markets and distributes a toy product called "Build Bonanza," which is "an adhesive backed building block tape" used to connect LEGO® style blocks. (*Id.* at ¶ 15).

Defendant Zuru LTD is a Chinese company with its principal place of business in Guangzhou, China. (*Id.* at ¶ 3). Zuru, Inc. is a Chinese-based corporation with its principal place of business in Forked River, New Jersey. (*Id.* at ¶ 4). According to the Complaint, Defendants intend to sell and manufacture a product strikingly similar to Build Bonanza, called "Nimuno Loops," which is also an "adhesive backed building block tape." (*Id.* at ¶ 17). Plaintiff alleges that Zuru has made false allegations about Ontel to Ontel's retail partners, in order to "Disrupt Ontel's business operations and client relationships." (*Id.* at ¶ 20). On May 17, 2017, Plaintiff claims Zuru met with Walmart representatives and indicated that Zuru had served Plaintiff with a cease and desist letter, which purportedly threatened legal action against Plaintiff for alleged patent infringement, and that Walmart should not carry Plaintiff's product. (*Id.* at ¶ 22). Zuru allegedly made similar statements that same day to one of Plaintiff's international distributors. (*Id.* at ¶ 25). The following day, Plaintiff claims that Zuru pressured Toys 'R' Us into "back[ing] away" from its commitment to place Plaintiff's products in its Back to School catalog. (*Id.* at ¶¶ 21- 22).

Plaintiff claims it has never received a cease and desist letter. (*Id.* at ¶ 23). Moreover, based on a search of the U.S. Patent and Trademark Office records, Zuru has no registered patents

or any other patents "under which they had rights related to . . . Ontel's Product." (*Id.* at ¶ 24). As such, Plaintiff alleges that Zuru's statements to its retail partners have been "made for the purpose of jeopardizing Ontel's business relationships and supplying the products themselves." (*Id.* at ¶ 26).

Plaintiff brings four causes of action based on federal and state law. Its first two causes of action allege unfair competition under both federal, 15 U.S.C. § 1125(a), and a New Jersey statute. It also alleges state tort claims under theories of tortious interference with prospective economic advantage and unjust enrichment. Defendants contend that all of the Counts of Plaintiff's Complaint are barred by the Noerr-Pennington doctrine.

## LEGAL STANDARD

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal*, 556 U.S. at 678-79; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). A complaint should be dismissed only if the well-pleaded alleged facts, taken as true, fail to state a claim. *See In re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395, 397-98 (3d Cir. 2000).

ANALYSIS

Defendants contend that all the claims alleged should be dismissed since they are barred by the Noerr-Pennington doctrine. That is, Defendants' "supposed misrepresentations in letters and communications concern[ed] enforcement of [their] intellectual property rights," entitle them to Noerr-Pennington immunity.

The Noerr-Pennington doctrine arises from anti-trust law, where it allows competitors to exercise their right to petition legislatures on a common basis. *See Allied Tube & Conduit Corp. v. Indian Head*, 486 U.S. 492, 499-501 (1988). "The *Noerr-Pennington* doctrine . . . protects citizens from being penalized for exercising their *first amendment* right to petition the government." *Carpet Grp. Int'l v. Oriental Rug Imps. Ass'n*, 256 F. Supp. 2d 249, 261 (D.N.J. 2003). "Rooted in the *First Amendment* and fears about the threat of liability chilling political speech," the doctrine immunizes private parties, "who attempted to influence government action – even where the petitioning had anticompetitive effects," from federal antitrust laws. *A.D. Bedell Wholesale Co. v. Philip Morris Inc.*, 263 F.3d 239, 250 (3d Cir. 2001). Although the doctrine originated in the antitrust context, it has been extended on a limited basis "to offer protection to citizens' petitioning activities in contexts outside the anti-trust area as well." *We, Inc. v. City of Philadelphia*, 174 F.3d 322, 326-27 (3d Cir. 1999); *see also BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516 (2002) (applying the doctrine to the National Labor Relations Act); *Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d 155, 160 (3d Cir. 1988) (doctrine applied to tort liability for actions based on petitions to the government to shut down a nursing home that was in violation of various regulations).

Generally, in order to receive Noerr-Pennington immunity, Defendants must have petitioned the government for redress. *See A.D. Bedell*, 263 F.3d at 250. For example, *A.D. Bedell*

noted that, "[u]nder the Noerr-Pennington doctrine, '[a] party who petitions the government for redress generally is immune from antitrust liability.'" *Id.* (citation omitted); s*ee also Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 208 F.3d 885, 893 (10th Cir. 2000) (holding that "because there was no petition of the government in the present case, the issue of immunity collapses into the issue of state law liability."). Moreover, Noerr-Pennington immunity has been extended to some limited non-traditional petitioning, such as "efforts to influence governmental action incidental to litigation such as prelitigation threat letters." *A.D. Bedell*, 263 F.3d at 252.

Citing *A.D. Bedell*, Defendants contend their efforts to protect their "extensive intellectual property rights" entitles them to Noerr-Pennington immunity. In *A.D. Bedell*, the Third Circuit was tasked with determining whether defendant tobacco companies were shielded from potential antitrust liability, since they collectively entered settlement agreements with sovereign states. 263 F.3d at 254. Seeing no reason to differentiate between settlement agreements, and other acts associated with litigation between the government and private actors, the court held that the settlement agreement gave rise to immunity since it constituted a "petitioning activity with sovereign states." *Id.* at 252-54.

Here, the Noerr-Pennington doctrine does not apply for several reasons. First, there is no evidence suggesting that Defendants have petitioned the government for any redress for purported interference with "intellectual property rights." Second, while Defendants argue that their cease and desist requests entitle them to immunity, the Complaint explicitly alleges that these requests were never actually made, nor has Defendants presented anything to the contrary. Finally, Defendants have failed to demonstrate how their communications to third-party retailers, regarding intellectual property rights litigation is akin to a doctrine that protects conduct between competitors when petitioning government. *See Sosa v. DIRECT TV, Inc.*, 437 F.3d 923, 934-36 (9th Cir. 2006).

Therefore, when viewing the record in light most favorable to Plaintiff, the Defendants' motion to dismiss pursuant to its Noerr-Pennington immunity is denied.

## ORDER

IT IS on this 4th day of October, 2017,

**ORDERED** that Defendants' motion to dismiss is **DENIED**.


*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.