UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

| | |
|---|---|
| ONTEL PRODUCTS CORPORATION, *Plaintiff*, v. ZURU, Ltd, et al, *Defendant.* | Civil Action No.: 17-cv-03658 (PGS)(LHG) MEMORANDUM AND ORDER |

SHERIDAN, U.S.D.J.

This matter comes before this Court on Plaintiff's motion to dismiss Defendant's second amended counterclaim (hereinafter "Counterclaim") [ECF No. 48].

I.

Plaintiff Ontel Products Corporation is a New Jersey-based company that markets and develops retail products commonly found in large retail stores, such as Toys 'R' Us, Walmart, Home Depot, and Bed Bath and Beyond. (Comp. at ¶ 10). Specifically, Plaintiff markets and distributes a toy product called "Build Bonanza," which is "an adhesive backed building block tape." (*Id.* at ¶ 15).

Defendants Zuru, LTD and Zuru, Inc. ("Zuru") are Chinese-based corporations that intend to sell and manufacture a product similar to Build Bonanza, called "Nimuno Loops." (*Id.* at ¶ 17). According to the Complaint, Zuru has made false allegations about Ontel to Ontel's retail partners, in order to "disrupt Ontel's business operations and client relationships." (*Id.* at ¶ 20). For

example, on May 17, 2017, Ontel claims Zuru met with Walmart representatives and indicated that it had served Ontel with a cease and desist letter, which purportedly threatened legal action against Ontel for alleged patent infringement, and that Walmart should not carry Ontel's product. (*Id.* at ¶ 22). Zuru allegedly made similar statements that same day to one of Plaintiff's international distributors. (*Id.* at ¶ 25). The following day, Ontel claims that Zuru pressured Toys 'R' Us into "back[ing] away" from its commitment to place Plaintiff's products in its Back to School catalog. (*Id.* at ¶¶ 21- 22).

Ontel claims it has never received a cease and desist letter. (*Id.* at ¶ 23). Moreover, based on a search of the U.S. Patent and Trademark Office records, Zuru has no registered patents or any other patents "under which they had rights related to . . . Ontel's Product." (*Id.* at ¶ 24). As such, Plaintiff alleges that Zuru's statements to its retail partners have been "made for the purpose of jeopardizing Ontel's business relationships and supplying the products themselves." (*Id.* at ¶ 26).

Ontel filed a Complaint on May 22, 2017. (ECF No. 1) bringing four causes of action based on federal and state law. The first two causes of action allege unfair competition under both federal, 15 U.S.C. § 1125(a), and state law. Ontel also alleges state tort claims under theories of tortious interference with prospective economic advantage and unjust enrichment. Zuru asserts numerous defenses in response to Ontel's claims.

On January 19, 2018, Zuru filed an answer and a second amended counterclaim (Counterclaim). (ECF No. 45).

On February 2, 2018, Ontel filed a motion to dismiss Zuru's counterclaim. (ECF No. 48). Generally, in the motion to dismiss Ontel alleges that Zuru's counterclaim is premised on the incorrect fact that Zuru has enforceable intellectual property rights. Moreover, Ontel argues that

Zuru failed to identify any right that was publicly known at the time Ontel launched its Build Bonanza Product.

On March 15, 2018, while this motion was still pending before this Court, Zuru submitted a letter with exhibits that purported to show Zuru ads that Ontel allegedly copied. (ECF No. 52). Ontel responded to the letter arguing that Zuru's submission constituted inappropriate supplemental briefing and was also devoid of an information that would impact the motion to dismiss. (ECF No. 53). A further response from Zuru followed, enclosing the ads' registrations from the Copyright Office. (ECF No. 54).

As a preliminary matter, the Court notes that this is a motion to dismiss. As such the Court will only consider the counterclaim and any integral documents attached in support in deciding this motion. The Court will not consider the above-mentioned letter submissions as they fall outside the four corners of the Complaint or counterclaims in this case. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994) ("In determining whether a claim should be dismissed under Rule 12(b)(6), a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record.").

In the Counterclaim, Zuru explains how its product was created. According to Defendant, the product was designed by Max Basler and Anine Kirsten, two designers who worked for Chrome Cherry, a product design company. (CC ¶¶20-21, ECF No. 45). Zuru, a small family-owned toy company, purchased the design and launched the product in March 2017. (*Id.* ¶¶34-35). A few weeks after launching the product, Zuru entered into a license agreement with Chrome Cherry to guarantee they had full rights on the product. (Id. ¶34). Zuru rebranded the product originally known as "Nimuno Loops", which became known as "Mayka Tape" and began

3

investing in its development, production, and marketing (*Id.* at ¶37). The configuration of the Mayka Tape product is subject to three pending U.S. copyright applications. (*Id.* ¶¶6-14).

- Application number 1-5105710482 entitled "Toy Block Tape Sculpture" ('482)
- Application number 1-5105710968 entitled "Toy Block Tape Sculpture" ('968)
- Application number 1-5105711016 entitled "Toy Block Tape Sculpture" ('016)

Defendant alleges that on June 5, 2017, the Register of Copyrights at the United States Copyright Office issued decisions and made determinations regarding the above application. The deposit, application, and fee required for the registration have been delivered to the Copyright Office in proper form. Since the Copyright Office has made a decision regarding the applications, Defendant argues that they are proper basis for the Counterclaim against Plaintiffs.

On December 11, 2017, the Copyright Office registered two advertisements created for the Mayka Tape, one depicting the product lining the back of the toy dinosaur, entitled "Nimuno Loops Sneaker Ad," and the other depicting the product lining the perimeter of a tennis show, entitled "Nimuno Loops Dino Ad." (*Id.* ¶¶15-18).

A month after the launch of the Indiegogo campaign, Ontel began offering its "Build Bonanza" product for pre-order. (*Id.* ¶45). Defendant avers that the product looks identical, and Plaintiff advertised the product in an identical manner as its product. (*Id.* ¶50). Zuru holds that the advertising was on Ontel's Build Bonanza product website until they received Zuru's counterclaim, and thereafter, Ontel quickly removed the infringing advertising from the website. (Id. ¶45). Zuru argues that Ontel's product is a "knock off" of their product and that their lawsuit against Zuru was a preemptive action.

Zuru also argues that by misappropriating the design of the Mayka Tape product and by using identical advertising, Ontel purposely induced consumer confusion, causing a likelihood of mistake or deception as to the source sponsorship, affiliation, connection, or association of Ontel's

4

Build bonanza product with Zuru's Mayka tape product. (*Id.* ¶53). Zuru contends that "by flooding the market with a knock-off product, Ontel has forced Zuru to reduce the price of its Mayka tape product." (Id. ¶55). Further, Ontel, made false or misleading statements and claims to retailers who stock the product, damaging Zuru. (Id. ¶¶56-57).

In the counterclaim, Zuru contends: (1) Copyright infringement of the '482, '968, and '016 applications, the "Dino Ad registration" and the "sneaker ad registration"; (2) Unfair competition under 15 U.S.C. §1125(a); (3) Unfair competition under New Jersey common law; (4) Tortious interference with prospective economic advantage; (5) Unjust enrichment; and (6) Violation of the New Jersey Consumer Fraud Act (N.J.S.A. §56:8-2).

II.

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).

On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). A district court is to conduct a three-part analysis when considering a Rule 12(b)(6) motion to dismiss. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). Second, the court must "review[] the complaint to strike conclusory allegations." *Id.* The court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the

5

plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

*Copyright Infringement (Count I)*

Ontel argues that Zuru has failed to allege a plausible claim for copyright infringement. Ontel contends that, after numerous requests, Zuru has not provided copies of the pending applications on which their copyright infringement claim is based. Specifically, Ontel argues that Count I should be dismissed to the extent it relies upon, what they conclude are pending or refused copyright applications. Ontel reached the conclusion that the copyright applications were pending or refused due to the lack of information provided by Zuru with regards to their status.

Zuru contends having sufficiently plead that Ontel copied the original elements of the Mayka tape product and its advertising and that Ontel has not and cannot dispute that the Mayka tape was first on the market.

> The test for copyright infringement is well-established. There are two essential elements: ownership of copyright, and copying by the defendant. *Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc.*, 797 F.2d 1222, 1231 (3d Cir. 1986). Copying is proven by showing not only that the defendant had access to a copyrighted work, but also that there are substantial similarities between the two works. *Id.; see also Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 291 (3d Cir. 1991) (footnote omitted) ("Copying is demonstrated when someone who has access to a copyrighted work uses material substantially similar to the copyrighted work in a manner which interferes with a right protected by 17 U.S.C. § 106.").

*Dam Things from Den. v. Russ Berrie & Co.*, 290 F.3d 548, 561-562, (3d. Cir. 2002). With regard to Ontel's claim that Zuru's registration is not final, Zuru points out that ownership of a copyright does not require registration or other action by the author to achieve protection of the copyright act. The Court agrees. "A 'copyright', as a right, vests immediately upon the creation of the work. 17 U.S.C. § 201(a). For this reason, a copyright must not be confused with the act of registering that right. Registration serves primarily to create a record of the creation of the work and it also allows the author to bring civil claims under the Copyright Act. 17 U.S.C. § 411(a)" *See Brownstein v. Lindsay*, 742 F.3d 55, 66 (3d. Cir. 2014).

Ontel next argues that Count I of Zuru's counterclaim concerning the "Sneaker Ad Registration" and "Dino Ad Registration" must be dismissed because the purported intellectual property rights on which the claim is based consist of two advertisements that merely contain the product. Despite Ontel's argument, the copyright application for these ads were registered on December 11, 2017 as "Nimuno Loops Sneaker Ad" registration VA 2-079-764 and "Nimuno Loops Dino Ad" registration number VA 2-079-763. Based on same, the claim is plausible and Ontel's argument that Zuru's proofs are insufficient to be awarded a copyright is best decided on summary judgment. As such, the motion is denied as to Count I.

*Unfair Competition Under 15 U.S.C. 1125(a)*

Ontel alleges that Zuru has failed to state a claim under section 1125(a) of the Latham Act. Ontel argues that Zuru cannot allege that Ontel made a false or misleading statement regarding Zuru's product because they did not submit any information regarding who made the statement who the statements were communicated to or how statements made by legally distinct third party Chinese entities located in China, not owned by Ontel may be imputed on Ontel in the U.S.

Zuru alleges that Ontel "knowingly and willfully caused consumer confusion regarding the affiliation, connection, association, origin, sponsorship, and/or approval of its Build Bonanza product with ZURU's Mayka Tape product by infringing upon Zuru's sculptural copyrights and misappropriating ZURU's advertising." (CC ¶75). Further, Zuru alleges that "Ontel knowingly and willfully made false or misleading descriptions or representations of fact which have caused, and will continue to cause, significant harm to Zuru." (CC ¶76). Additionally, "Ontel knowingly and willfully misrepresented the nature, characteristics, and qualities of the Mayka Tape product and Zuru's intellectual property rights in its commercial advertising and promotion, thereby causing harm to Zuru." (*Id.* ¶77). Specifically, Zuru refers to "Ontel falsely inform[ing] Zuru's retail customers that Zuru lacked intellectual property rights in the Mayka Tape product and that Ontel's Build Bonanza product did not infringe these rights." (*Id.* ¶78).

"It is well established that a person's use of a picture or other depiction of a competitor's product to sell his own product violates [Section] 43(a) [of the Latham Act, 15 U.S.C. §1125(a)] In such situations, unfair competition exists because the defendant unfairly seeks to trade on the plaintiff's reputation and goodwill by representing plaintiff's product as his own or by creating the false impression that some association exists between the two products or their sources." *Interlink Prods. Int'l, Inc. v. F & W Trading LLC*, 2016 U.S. Dist. LEXIS 44256, *21-22 (D.N.J. Mar. 31, 2016). With regard to the advertising portion of the claim, Zuru has sufficiently supported this claim. As to the statements purportedly made by Ontel, the Court looks at the facts provided by Zuru in the "facts" section of the Counterclaims. With regard to those statements Zuru states,

> Ontel, through at least one of its agents, has made literally false and/or misleading statements and claims to retailers who stock products for end consumers. Specifically, in May 2017, Zuru learned that a Chinese company, TV Products (HK) Ltd., make false and disparaging statements about Mayka Tape and Zuru's intellectual property rights in order to gain a competitive afvantage over Zuru in the marketplace. (CC ¶56)

8

TV Products (HK) Ltd. is an agent of Ontel. Indeed, Ms. Caroline Lea Kinsey Ontel's in-house counsel, has testified under oath that Ontel placed an order for Build Bonanza with TV Products (HK) Ltd. purportedly in March 2017. (Exhibit B). (CC ¶57)

*Unfair Competition under New Jersey Common Law (Count III) and Unjust enrichment (Count V)*

Plaintiff argues that Count III and V are preempted by Federal Copyright law, 17 U.S.C. §301. Section 301(a) of the Copyright Act provides that:

> all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 . . . are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). However, subsection b(1) makes explicit what is implicit in § 301(a) that the preemption provision does not apply if the "subject matter[] does not come within the subject matter of copyright as specified by sections 102 and 103." 17 U.S.C. § 301(b)(1). In determining whether a cause of action is preempted, the Court applies a functional test. "[I]f a state cause of action requires an extra element, beyond mere copying, preparation of derivative works, performance, distribution or display, then the state cause of action is qualitatively different from, and not subsumed within, a copyright infringement claim and federal law will not preempt the state action." *Dun & Bradstreet Software Servs. v. Grace Consulting, Inc.*, 307 F.3d 197, 217 (3d. Cir. 2002).

*Count V (Unjust enrichment)*

Zuru argues that unjust enrichment claims are preempted by the Copyright Act where they "rest[] on an allegation that the defendant has secured a benefit due to the plaintiff under Copyright Act." *Collegesource, Inc. v. Academyone, Inc.*, 597 F. App'x 116, 128 (3d Cir. 2015).

Here, as plead, "Ontel's infringement of Zuru's intellectual property and false and misleading statements to ZURU's retail customers and distribution partners constitute unjust enrichment, as they enable Ontel to wrongfully benefit at ZURU's expense." (CC ¶101). "[I]n order to state a claim for unjust enrichment in New Jersey, a plaintiff must allege that "(1) at plaintiff's expense (2) defendant received benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it." *In re K-Dur Antitrust Litig.*, 338 F.Supp.2d 517, 544 (D.N.J. 2004). Given the different standard for this claim as compared to the copyright infringement claim, the Court finds Count V not to be preempted.

*Count III (Unfair Competition)*

Plaintiff argues that Count III is also preempted. In Count III, Zuru states that 'Ontel in infringing upon ZURU's copyrights, consciously causing consumer confusion, and making false and misleading statements to ZURU's consumers constitute unfair competition and unfair business practices in violation of New Jersey common law." (CC ¶85).

"[M]any state law rights that can arise in connection with instances of copyright infringement satisfy the extra element test, and thus are not preempted by section 301. These include unfair competition claims based upon breach of confidential relationship, breach of fiduciary duty and trade secrets." *Computer Assocs. Int'l v. Altai*, 982 F.2d 693, 717 (2d Cir. 1992) (citing *Balboa Ins. Co. v. Trans Global Equities*, 218 Cal. App. 3d 1327, 1339-53, 267 Cal. Rptr. 787, 793-803 (Ct. App. 3rd Dist.), cert. denied, 111 S. Ct. 347, 112 L. Ed. 2d 311 (1990).

Based on the facts provided thus far in the counterclaims, the Court finds that this Count survives the motion to dismiss.

### *Tortious Interference (Count IV)*

Plaintiff argues that Zuru failed to state a plausible claim for tortious interference with prospective economic advantage. In Count IV Zuru alleges that "Ontel has knowingly and intentionally led retail customers to falsely believe that Ontel does not infringe ZURU's intellectual property rights that the Mayka Tape product should not be carried, and that ZURU's communications should not be heeded." Further that, "Zuru has been injured due to Ontel's actions and conversations." (CC ¶¶90-91). These actions and conversation have injured and harmed Zuru's relationship with stores, among the named ones in the counterclaim are Toys 'R' Us and Walgreen Company. (Id. ¶¶92-93).

Plaintiff argues that Zuru has not provided any facts to support the claim that TV products was an agent of Ontel and no facts to demonstrate that it held any intellectual property at the time the statements were made. Plaintiff argues that the statements made by Zuru are conclusory in nature and cannot support a claim for tortious interference.

"To state a claim for tortious interference with prospective economic advantage under New Jersey law, a plaintiff must allege: '(1) a reasonable expectation of economic advantage from a prospective contractual or economic relationship; (2) the defendant intentionally and maliciously interfered with the relationship; (3) the interference caused the loss of the expected advantage; and (4) actual damages resulted.'" *New Skies Satellites, B.V. v. Home2US Communs., Inc.*, 9 F. Supp. 3d 459, 472 (D.N.J. 2014) (quoting *Am. Leistritz Extruder Corp. v. Polymer Concentrates, Inc.*, 363 Fed. Appx. 963, 967 (3d Cir. 2010)). For purposes of this tort, "malice is defined to mean the harm was inflicted intentionally and without justification or excuse." *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 751, 563 A.2d 31, 37 (N.J. 1989) (citing *Rainier's Dairies v. Raritan Valley Farms, Inc.*, 19 N.J. 552, 563, 117 A.2d 889 (N.J. 1955)).

In the facts leading to the counterclaims, Zuru stated, with more specificity than mentioned above, the nature of the statements. For instance, Zuru states

> Ontel, through at least one of its agents, has made literally false and/or misleading statements and claims to retailers who stock products for end consumers. Specifically, in May 2017, Zuru learned that a Chinese company, TV Products (HK) Ltd., made false and disparaging statements about Mayka Tape and Zuru's intellectual property rights in order to gain a competitive advantage over Zuru in the marketplace.
>
> TV Products (HK) Ltd. is an agent of Ontel. Indeed, Ms. Caroline Lea Kinsey, Ontel's in-house counsel, has testified under oath that Ontel placed an order of Build Bonanza with TV Products (HK) Ltd., purportedly in March 2017.

(CC 56-57). The Court finds the information submitted to be sufficient to survive a motion to dismiss.

### *Violation of New Jersey's Consumer Fraud Act (Count VI)*

Ontel argues that Zuru has failed to state a claim for violation of New Jersey's Consumer Fraud Act. Specifically, Ontel alleges that Zuru has failed to plausibly allege, under the appropriate pleading standard, the requisite elements of unlawful conduct, ascertainable loss, and the necessary causation between these elements, for its claim to survive. Additionally, Ontel aruges that Zuru failed to plea with sufficient particularity any ascertainable loss or causal connection between the alleged misconduct and loss. Zuru alleges that "by infringing the copyrights associated with Zuru's Mayka Tape product, Ontel has deceived New Jersey consumnts as to the source, sponsorship, approval, and/or affiliation of Ontel's Build Bonanza product with Zuru's Mayka Tape product." (CC ¶110). Additionally, Zuru alleges that "Ontel has deceived consumers as to the lawfulness of its infringing products and competed unfairly, in violation of N.J.S.A. 56:8-2." (Id. ¶111). As to damages, Zuru alleges that the "acts and communications have caused Zuru irreparable injury, loss of reputation, and pecuniary damages." (Id. ¶112).

R. Civ. P. 9(b) applicable to fraud claims, which states:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

To state a claim under the NJCFA, a plaintiff must allege three elements: (1) the defendant's unlawful practice, (2) the plaintiff's ascertainable loss, and (3) a causal relationship between the two. *Intl Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 389, 929 A.2d 1076 (2007) (internal quotation marks omitted). Defendant argues that Plaintiffs failed to plea any affirmative acts that constitute unlawful practice under NJCFA. (Def. Br. 16.) The NJCFA defines "unlawful practice" as:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise[.]

*N.J.S.A.* 56:8-2. The CFA does not define what constitutes an "ascertainable loss," but the New Jersey Supreme Court has recognized that the loss must be capable of calculation, and not just hypothetical or illusory. *Thiedemann v Mercedes-Benz USA, LLC*, 183 N.J. 234, 248, 872 A.2d 783 (2005); *see also Torres-Hernandez v. CVT Prepaid Solutions, Inc.*, No. 08-1057—FLW, 2008 U.S. Dist. LEXIS 105413, 2008 WL 5381227, at *7 n. 3, (D.N.J. Dec. 9, 2008) ("A sufficiently plead ascertainable loss is one with enough specificity as to give the defendant notice of possible damages."). "A cognizable injury . . . must consist of more than just unmet expectation." *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 335 (D.N.J. 2014).

Zuru's claims with regard to the NJCFA claim are not detailed. Additionally, the damages alleged have not been described sufficiently. As such, ascertaining the amount of the loss may be

difficult. More support with regard to this claim may be needed, thus the claim is dismissed at this juncture.

ORDER

This matter, having been brought before the Court on Ontel's motion to dismiss Zuru's second amended counterclaims [ECF No. 48], and the Court having considered the briefs and submissions of the parties, and having heard oral argument;

IT IS on this 28th day of August, 2018;

**ORDERED** that Ontel's motion to dismiss (ECF No. 48) is DENIED as to Counts I, II, III, IV, and V; and it is further

**ORDERED** that Ontel's motion to dismiss (ECF No. 48) is GRANTED as to Count VI.

Counterclaim Plaintiff may amend the dismissed counterclaim within 30 days from the date of this Order.

_____
PETER G. SHERIDAN, U.S.D.J.